1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL P. BARRETT,                    No.  2:16-cv-01562-KJN

12                  Plaintiff,

13          v.                              FINDINGS AND RECOMMENDATIONS

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                    Defendant.
16

17

18          Plaintiff Michael P. Barrett seeks judicial review of a final decision by the Commissioner

19   of Social Security ("Commissioner") denying his application for Disability Insurance Benefits

20   ("DIB") under Title II of the Social Security Act ("Act").[1]  In his motion for summary judgment,

21   plaintiff principally argues that the administrative law judge ("ALJ") committed legal error in his

22   assessment of plaintiff's residual functional capacity ("RFC") and that, as a result, the testimony

23   of the vocational expert ("VE") is not substantial evidence to support the ALJ's step five

24   decision.  (ECF 12.)  The Commissioner opposed plaintiff's motion and filed a cross-motion for

25   summary judgment.  (ECF No. 18.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 19.)

26          For the reasons that follow, the undersigned recommends that plaintiff's motion for

27

28   _____
     [1] This action proceeds before the undersigned pursuant to Local Rule 302(c)(15).

                                            1

1  summary judgment be GRANTED, the Commissioner's cross-motion for summary judgment be

2  DENIED, and the action be REMANDED for further administrative proceedings consistent with

3  these findings and recommendations.

4  I.      BACKGROUND

5          Plaintiff was born on July 11, 1982.  (Administrative Transcript ("AT") 297.)[2]  He

6  completed high school and attended some college.  (AT 73–74.)  Plaintiff first applied for DIB on

7  September 7, 2011, alleging that his disability began on August 17, 2009.  (AT 80.)  After his

8  application was denied initially and on reconsideration, plaintiff had a hearing before ALJ

9  Plauche F. Villere, Jr. on January 23, 2013.  (Id.)  Subsequently, ALJ Villere determined that

10 plaintiff was not disabled from August 17, 2009 through March 11, 2013.  (AT 191.)  Although

11 not contained in the administrative record, the Appeals Council apparently denied plaintiff's

12 request for review of ALJ Villere's decision on February 20, 2014.  (ECF No. 12 at 3.)

13         On March 13, 2014, plaintiff reapplied for DIB, alleging that he had been disabled since

14 January 24, 2013.  (AT 297–98.)  After his application was denied initially and on

15 reconsideration, plaintiff requested a hearing and amended his disability onset date, requesting a

16 closed period ("CP") of disability from March 12, 2013, through August 2015.  (AT 19, 404–05,

17 415–16.).  Represented by counsel, plaintiff had a two-day hearing before ALJ Peter F. Belli on

18 April 7, 2015, and August 21, 2015.  (AT 61, 122.)  ALJ Belli issued a decision on November 16,

19 2015, determining that plaintiff "has not been under a disability, as defined in the Social Security

20 Act, from January 24, 2013 though the date of [his] decision."  (AT 34.)  The ALJ's decision

21 became the final decision of the Commissioner when the Appeals Council denied plaintiff's

22 request for review on May 6, 2016.  (AT 1–3.)  Thereafter, plaintiff filed this action on July 7,

23 2016, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

24 /////

25

26 [2] Because the parties are familiar with the factual background of this case, including plaintiff's
   medical and mental health history, the court does not exhaustively relate those facts in this order.
27 The facts related to plaintiff's impairments and treatment will be addressed insofar as they are
   relevant to the issues presented by the parties' respective motions.
28

1    II.     ISSUES PRESENTED

2           On appeal, plaintiff raises the issues of whether ALJ Belli's determination of the extent to

3    which plaintiff could pay attention is reviewable and whether the testimony of VE Dr. Bonnie

4    Drumwright is substantial evidence for ALJ Belli's step five finding of non-disability.  (ECF No.

5    12 at 4.)  Plaintiff's issues are better phrased as one:  whether the ALJ's RFC assessment was

6    legally sufficient to serve as a hypothetical for the VE's testimony, upon which the ALJ relied to

7    make his finding of non-disability.  Additionally, the Commissioner raises the issue of whether

8    plaintiff has rebutted the presumption of non-disability.  (ECF No. 18 at 20–21.)

9    III.    LEGAL STANDARD

10          The court reviews the Commissioner's decision to determine whether (1) it is based on

11   proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

12   as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

13   evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

14   F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

15   mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

16   Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

17   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

18   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

19   court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

20   interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

21   IV.    DISCUSSION

22          A.     Summary of the ALJ's Findings

23          The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard

24   five-step analytical framework.[3]  Preliminarily, the ALJ found that plaintiff meets the insured

_____

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled
persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as
an "inability to engage in any substantial gainful activity" due to "a medically determinable
physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel
five-step sequential evaluation governs eligibility for benefits under both programs.  See 20

status requirements through March 31, 2018. (AT 21.)  At step one, the ALJ determined that

plaintiff did not engage in substantial gainful activity between January 24, 2013, and June 1,

2014, but that he has not been disabled since June 1, 2014, because he has been engaged in

substantial gainful activity since that date.  (Id.)  At step two, the ALJ concluded that plaintiff

"has the following severe impairments:  chronic posttraumatic stress disorder (PTSD), mood

disorder, cognitive disorder NOS, migraine headaches and chronic lumbar strain."  (Id.)

However, at step three, the ALJ found that plaintiff "does not have an impairment or combination

of impairments that meets or medically equals the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1."  (AT 22.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff

could perform light work as defined in 20 C.F.R. § 416.967(b), except:

> no climbing ladders/ropes/scaffolds and no working at heights or
> around unprotected hazardous machinery . . . Mentally, he is
> limited to performing simple job instructions and occasionally
> detailed job instructions, occasionally interacting with supervisors

---

C.F.R. §§ 404.1520,  404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-
42 (1987).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the
> claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step
> three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or
> equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
> claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing her past relevant work?  If so, the
> claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any
> other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

4

> and co-workers and the general public less than occasionally, frequently work around co-workers without interruption as long as he is not working with them, **able to pay attention more than frequently but less than constantly**, and able to adjust to simple changes in a workplace and make simple workplace judgments . . .

(AT 23 (emphasis added).)  At step four, the ALJ determined that plaintiff is unable to perform any past relevant work.  (AT 33.)  However, at step five the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the VE's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed.  (Id.)

Additionally, the ALJ addressed the presumption of non-disability that was created by the March 11, 2013 decision regarding plaintiff's disability.  (AT 19.)  Specifically, the ALJ found that there was a material change in plaintiff's RFC but no material change in his age, education, or past work/transferable skills.  (AT 34.)  Nonetheless, the ALJ determined that even with the change in plaintiff's RFC, "a finding of continuing non-disability is warranted during the requested CP of disability and thereafter."  (Id.)  Therefore, the ALJ concluded that plaintiff has not been disabled from January 20, 2013, through the date of the ALJ's decision.  (Id.)

B.     Plaintiff's Substantive Challenge to the Commissioner's Determinations

Plaintiff contends that the ALJ's RFC assessment is materially inconsistent and therefore unreviewable.  (ECF No. 12 at 7.)  Furthermore, plaintiff contends that the ALJ's hypothetical question to the VE, which incorporated the RFC, was inaccurate.  (Id. at 8.)  As a result, plaintiff alleges that the VE's testimony does not constitute substantial evidence for the ALJ's step five disability determination.  (Id. at 11.)

1.     *Legal sufficiency of the ALJ's RFC assessment*

The ALJ determines a plaintiff's RFC for use at steps four and five of the disability framework.  See 20 C.F.R. § 416.920(e).  The RFC "is the most [one] can still do despite [his or her] limitations."  20 C.F.R. § 416.945(a)(1).  "The RFC is used at step four to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work.  If, at step four, 'a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work.'"  Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014) (quoting Embrey v. Bowen, 849 F.2d 418,

1   422 (9th Cir.1988).

2
3
4

> At step five, the ALJ can call upon a [VE] to testify as to: (1) what
> jobs the claimant, given his or her [RFC], would be able to do; and
> (2) the availability of such jobs in the national economy.  At the
> hearing, the ALJ poses hypothetical questions to the [VE] that "set
> out all of the claimant's impairments" for the [VE]'s consideration.

5   Tackett, 180 F.3d at 1101 (quoting Gamer v. Secretary of Health and Human Servs., 815 F.2d

6   1275, 1279 (9th Cir.1987)).  Importantly, "[t]he ALJ's depiction of the claimant's disability must

7   be accurate, detailed, and supported by the medical record."  Id.

8          The Social Security Administration has provided specific instructions to ALJs on how to

9   complete steps four and five, including a list of terms to be used in RFC assessments, as well as

10  their definitions.  See Program Operations Manual System ("POMS") DI §25001.001 (A).  The

11  use of "frequently" in an RFC "means that the activity or condition occurs one-third to two-thirds

12  of an 8-hour workday."  POMS DI §25001.001 (A)(33).  Whereas, the use of "constantly" in an

13  RFC "means that the activity or condition occurs two-thirds or more of an eight-hour day."

14  POMS DI §25001.001 (A)(11)

15         Here, the ALJ's RFC assessment was materially inconsistent because he determined that

16  plaintiff was "able to pay attention more than frequently but less than constantly."  (AT 23.)

17  During the hearing, the ALJ made clear that he was using these terms, as defined by the

18  Commissioner.  (AT 120 (". . . we have to work with vocational terms.  Vocational terms

19  according to the Commissioner is [sic] occasional, frequent and constant and not percentages.").)

20  Substituting the definitions for the terms, the ALJ's RFC assessment was that plaintiff was able to

21  pay attention **more than** "one-third to two-thirds of an 8-hour workday" and **less than** "two-

22  thirds or more of an 8-hour workday."  (See AT 23; POMS DI §25001.001 (A)(11), (33).)

23  Outside of the ken of theoretical mathmeticians, something cannot be both more than and less

24  than two-thirds.[4]

_____

25  [4] The Commissioner's argument on this point is unconvincing.  The Commissioner asserts that
26  "the ALJ properly found that [p]laintiff could pay attention one-third up to two-thirds of the time
    in an eight-hour workday, but not more than two-thirds or more of the time."  (ECF No. 18 at 22.)
27  However, this is a misrepresentation of the ALJ's determination.  As explained, the ALJ did not
    find that plaintiff could pay attention one-third **up to** two-thirds of a workday, rather he found
28  that plaintiff could pay attention **more than** one-third to two-thirds of a workday.

At step five, the ALJ used this materially inconsistent finding as part of the hypothetical he posed to the VE.  (AT 118 (". . . he's able to more than frequently, but less than constantly pay attention to tasks and/or concentrate.").)  Because of the material inconsistency in the hypothetical, the ALJ's depiction of plaintiff's disability was inaccurate, constituting legal error. See Tackett, 180 F.3d at 1101.

2.    *Harmless error*

When an ALJ has committed legal error in his or her disability findings, but the findings are nonetheless supported by substantial evidence, a court will not reverse if the error was harmless.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

Here, at step five, the ALJ relied solely upon the VE's testimony to conclude that "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (AT 33–34.)  This conclusion, in turn, served as the basis of the ALJ's determination that plaintiff was not disabled.  (AT 34.)  For the reasons that follow, the ALJ's materially inconsistent RFC assessment was not harmless error because it fatally undermined the VE's testimony and the ALJ's step five determination.

First, as explained above, the hypothetical posed to the VE was inaccurate and not an appropriate basis for her testimony.  See Tackett, 180 F.3d at 1101.

Second, the record demonstrates that the ALJ's RFC assessment confused the VE.  At one point, the VE asked for clarification regarding what the ALJ meant by "more than frequently." (AT 118.)  The ALJ responded that he meant "somewhere in between" frequently and constantly. (Id.)  This did not dispel the VE's confusion, as demonstrated by this exchange between her and plaintiff's attorney:[5]

> Q      Doctor, what's your understanding in terms of time or
> percentage getting [b]ack to that component of the first hypothetical

---

[5] This discussion did not resolve the RFC's inherent inconsistency—"something in between two-thirds and two-thirds" is equally as nonsensical as "more than and less than two-thirds" or "the empty pot that overflows."

where somebody can pay attention more than frequently, but less than constantly?

A    Well, I guess I'm taking that as being the person needs to be, needs to be in a job where they can focus most of the time I guess I'd say.  **But yes, it was confusing to me I'm not, hope I'm understanding it.**

Q    **Is it not clear to you?**

A    **Yes, I prefer like a percentage**.  It's easier for me if I have a percentage.

(AT 119 (emphasis added).)  In response, the ALJ asserted that he was required to use the terms "occasional, frequent and constant and not percentages."  (AT 120.)

Third, the VE incorrectly asserted that "frequent is in terms of hours a day[,] up to six hours a day."  (Id.)  However, as noted above, in this context "frequently" means "one-third to two-thirds of an 8-hour workday."  POMS DI §25001.001 (A)(33).  Two-thirds of eight is five and one-third, not six.  It follows that "frequently able to concentration" means that one can concentrate up to five and one-third hours of an eight-hour workday, not six.

Fourth, the VE agreed with plaintiff's attorney that "if somebody is off-task for two hours out of every eight-hour workday" then they will not be meeting the employer's expectations.  (AT 120.)  The VE's testimony was based upon the assumption that plaintiff could concentrate for more than six hours a day.  (Id.)  Yet, this assumption does not follow from the ALJ's RFC assessment—more than frequently equals more than five and one-third hours, whereas less than constant concentration equals less than five and one-third hours.

Thusly, the ALJ's materially inconsistent RFC assessment was not harmless error because it fatally undermined the VE's conclusion, which as a result, does not constitute substantial evidence for the ALJ's step five determination.[6]

3.    *Presumption of non-disability*

"When adjudicating [a] subsequent claim involving an unadjudicated period, adjudicators

---

[6] The undersigned does not address the Commissioner's argument that the RFC is otherwise supported by substantial evidence in the record.  (See ECF No. 18 at 20.)  The record may well have supported a finding of non-disability, if the ALJ had provided a legally sufficient RFC assessment.

8

will apply a presumption of continuing non[-]disability and determine that the claimant is not disabled with respect to that period, unless the claimant rebuts the presumption.  A claimant may rebut the presumption by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated  period."  Acquiescence Ruling 97-4(9); see Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988).

The Commissioner rightfully asserts that this presumption of non-disability applies to plaintiff's case, as he is seeking disability after he had been previously denied disability.  (ECF No. 18 at 21.)  However, the Commissioner's argument that plaintiff has not rebutted the presumption of non-disability is unavailing.  The ALJ already addressed the presumption, finding that there was a material change in plaintiff's RFC.  (AT 34.)  Yet, the ALJ also determined that even with the change in plaintiff's RFC a finding of non-disability was valid based on the ALJ's step five determination that there are jobs that exist in significant numbers that plaintiff can perform.  (AT 33–34.)  As explained, this conclusions is not supported by substantial evidence. Therefore, the presumption of non-disability is no bar to remand in this matter.

V.      CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion for summary judgment (ECF No. 12) be GRANTED.

2.      The Commissioner's cross-motion for summary judgment (ECF No. 18) be DENIED.

3.      The final decision of the Commissioner be REVERSED, and the action be REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may

9

waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

　　　　IT IS SO RECOMMENDED.

Dated:  July 14, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

10